UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AET RAIL GROUP, LLC,

              Plaintiff,                  08-CV-6442

              v.                      **DECISION and**
                                                                   **ORDER**

SIEMENS TRANSPORTATION SYSTEMS, INC.,

              Defendant.

_____

## INTRODUCTION

Plaintiff AET Rail Group, LLC ("plaintiff" and/or "AET"), brings this diversity action against defendant Siemens Transportation Systems, Inc. ("defendant" and/or "STS"), alleging five causes of action including: breach of contract, quantum meruit, breach of California's "Prompt Payment" laws, theft of intellectual property and tortious interference of plaintiff's relationships with its employees. Originally, plaintiff commenced this action in the Supreme Court of the State of New York by filing a summons and complaint (the "Complaint"). Defendant timely filed a petition for removal based on diversity jurisdiction pursuant to 28 U.S.C. §1332 and as a result the action was removed to this Court. Thereafter, the defendant served and filed an Answer, which included three counterclaims against plaintiff. Upon receipt of the counterclaims, plaintiff served and filed its response to defendant's counterclaims. The defendant thereafter wished to withdraw the counterclaims. Although the defendant believes the counterclaims are meritorious, it does not

believe it will be able to sustain its burden of proof as to damages at trial. The plaintiff however, refused to stipulate to a dismissal of the counterclaims in accordance with Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and (c).

Both plaintiff and defendant have filed various motions, which the court will set forth in the order they were filed. Defendant filed a Motion to Withdraw its Counterclaims without prejudice pursuant to Rule Fed.R.Civ.P.41(a)(2). Plaintiff did not directly oppose this motion but filed a Cross-Motion to Dismiss the defendant's first two counterclaims with prejudice[1] pursuant to Fed.R.Civ.P 56 and/or 12(c). In addition, plaintiff requests the Court to dismiss defendant's First, Second, Sixth, Seventh and Eighth Affirmative Defenses under Rules 56 and/or 12(c). Plaintiff also asks that the Court strike the "for cause" language in defendant's Answer at paragraphs 18 and 23 pursuant to Rule 12(f). Further, defendant filed a motion for partial Summary Judgment dismissing plaintiff's Second and Fourth Causes of Action, which plaintiff has opposed. The Court will address these motions seriatim.

<u>BACKGROUND</u>

On October 14, 2003, the California Department of Transportation ("Caltrans") awarded a contract to STS ("Contract #75AO205") for the overhaul of 66 bi-level intercity rail cars. <u>See</u> Docket #16

---

[1]Plaintiff does not oppose the defendant's request for dismissal of the third counterclaim without prejudice. Accordingly, the Court dismisses the third counterclaim without prejudice.

Plaintiff's Statement of Facts, ¶5 ("PSOF"). The overhaul consisted of HVAC systems, toilets, trucks, wheelchair lifts and floors, at the rate of two cars per month. <u>See</u> <u>id.</u>, ¶6. The work pertaining to wheelchair lifts formed a part of the work that defendant sub-contracted plaintiff to perform. <u>See</u> Docket #22 Defendant's Responding Statement of Facts, ¶7 ("Def. Facts"). The defendant hired plaintiff to perform certain work as a sub-contractor in connection with a train car refurbishment project under certain written contracts, purchase orders ("P.O."s) and service orders ("S.O."s). <u>See</u> Docket #17 Defendant's Statement of Facts ("DSOF"), ¶1. The work included refurbishment of wheelchair lifts that were installed in train cars. <u>See</u> <u>id.</u>, ¶2. In this regard, the parties entered into sub-contracts as set forth in defendant's contracts numbered #213 and #222, together with addendums. <u>See</u> PSOF, ¶8.

According to the defendant, the work on the wheelchair was governed by a written S.O., which included a "Release of Information" provision. <u>See</u> DSOF, ¶¶3-4.[2] Plaintiff disputes defendant's assertion and states that the work on the wheelchair lifts were not only governed by a written S.O., but were also governed by defendant's contract #222 together with plaintiff's revised proposal dated July

---

[2]The Release of Information provision states: "Any knowledge or information, which Seller may disclose to STS, shall not be deemed to be confidential or proprietary information and shall be acquired by STS free from any restriction as to use or disclosure thereof. Seller shall not, without the prior written consent of STS, publicly announce or otherwise disclose the existence or the terms of this Agreement, or release any publicity regarding this Agreement, or use the name of STS in any manner, or any of its products. This provision shall survive the expiration, termination or cancellation of this Agreement. <u>See</u> <u>id.</u>, ¶4.

7, 2004, which provided the details of the parties' agreement. <u>See</u> Docket #25. Plaintiff's Responding Statement of Facts, ¶1 ("Pltf. Facts"). Plaintiff claims that the S.O. referred to by defendant was to enable the plaintiff to invoice the defendant for the work. However, it was not the parties' agreement. <u>See</u> <u>id.</u> Moreover, plaintiff states that the parties' agreement relating to the wheelchair lift work was as noted in the July 7, 2004 proposal from plaintiff to defendant. <u>See</u> <u>id.,</u> ¶2.

In addition, plaintiff contends that the P.O.s included a termination for convenience clause, allowing the defendant to terminate the agreement without cause, upon written notice. <u>See</u> PSOF, ¶11. The clause required that upon such termination, the parties were to use their best efforts to agree by negotiation, within three months, on the amount of payment, if any, to be made to the terminated party. <u>See</u> <u>id.</u> On or about May 2006, after the agreement between the parties had been in effect for approximately two years, defendant decided to accelerate the overhaul project, with the goal of completing the overhaul of a car a week instead of two per month, which was the rate in effect until that time. <u>See</u> <u>id.,</u> ¶12. After making the decision to accelerate, plaintiff claims defendant attempted to compel plaintiff's acquiescence to this alteration of the parties' agreement, while refusing to agree to plaintiff's request for additional compensation. <u>See</u> <u>id.,</u> ¶14. When plaintiff would not agree to the acceleration of the overhaul project,

defendant retaliated by terminating the agreement and transferring plaintiff's work to a local company. See id., ¶15. The termination was effectuated by correspondence dated October 24, 2006 wherein the defendant referred to the inability of the parties to come to an acceptable agreement to accelerate the overhaul as the reason for the termination. See id., ¶16. Following the termination, the parties entered into negotiations, as required and proposed by the defendant in its termination correspondence.

## DISCUSSION

### I.   STS's Motion for Voluntary Dismissal

Where a plaintiff moves for voluntary dismissal of an action without defendant's consent, the court may grant the motion only "upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). Where, as here, an answer with counterclaims and motions for summary judgment have been filed, and the plaintiff has refused to stipulate to dismissal of defendant's counterclaims, voluntary dismissal may only be effectuated by order of the court. See Fed.R.Civ.P. 41(a)(2) (court may grant motion for voluntary dismissal only "upon such terms and conditions as the court deems proper."); see also Fed.R.Civ.P. 41(c) (rule applies to counterclaims as well as to plaintiff's claims). The decision whether to grant a Rule 41(a)(2) motion for voluntary dismissal lies within the sound discretion of the court. See Catanzano v. Wing, 277 F.3d 99, 109 (2d Cir.2001). The court's decision should be informed by the following

factors: (1) the diligence in bringing the motion; (2) any "undue vexatiousness" on the part of the defendant in this case; (3) the extent to which the suit has progressed, including plaintiff's effort and expense in preparation for trial; (4) the duplicative expense of potential relitigation; and (5) the adequacy of the defendant's explanation for the need to dismiss. <u>See</u> <u>Zagano v. Fordham Univ.</u>, 900 F.2d 12, 14 (2d Cir.1990); <u>Catanzano</u>, 277 F.3d at 109-10.

In this case, all the aforementioned factors militate in favor of dismissal. First, STS's conduct in this case has not been unduly vexatious. STS's counterclaims were not baseless or frivolous, nor has STS engaged in any patently dilatory or inappropriate motion practice. There is no suggestion that the counterclaims were so devoid of merit that its only purpose could have been to harass AET. A court can resolve the question of vexatiousness without first holding a trial on the merits of STS's counterclaims. It is not necessary for the Court to show that AET's conduct was blameless to conclude that STS's counterclaims was vexatious to the litigation. In any event, STS's view of the law may be reasonable even if it is not ultimately sustained. Thus, in ruling that STS's conduct has not been vexatious, the court reaches no conclusion concerning whether STS would have prevailed on the merits had these counterclaims been brought forth at trial; instead, the court simply finds that the counterclaims were filed in good faith, and that the legal arguments

and litigation strategies employed by STS were neither malicious, nor frivolous, nor otherwise improper.

On the matter of expenses, it does not appear that dismissal of the counterclaims at this juncture would result in duplicative expenses should the counterclaims be re-asserted in the future. At the time the motion was filed, discovery had not yet fully commenced, and a trial date had not been set. Moreover, STS has no expectation of recovering damages from AET based on its voluntary dismissal of the counterclaims. Accordingly, from STS's perspective, there is little point in pursuing and continuing its counterclaims. This explanation is reasonable and betrays no sign of bad faith or ulterior motive. With respect to STS's diligence in bringing the motion for voluntary dismissal, it did not delay in bringing the motion. STS sought voluntary dismissal soon after it filed its Answer with counterclaims when the litigation had barely begun, a scheduling order had just been entered and the parties were serving initial discovery demands. Further, the final <u>Zagano</u> factor-the extent to which the case has progressed-also weighs in favor of dismissal of STS's counterclaims. As mentioned above, discovery has not fully commenced and trial preparation has not begun. The case is still in its early stages and as such the parties have done little (if anything) to prepare for trial. Accordingly, the five <u>Zagano</u> factors weigh in favor of dismissal of the counterclaims. Thus, I find that the conditions of this case favor granting voluntary dismissal.

**II.  Aet Rail's Cross-Motion For Summary Judgment and/or
Judgment on the Pleadings**

**A.  Standards of Review**

      **1.  Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that
summary judgment "should be rendered if the pleadings, the discovery
and disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law." <u>See</u> Fed. R. Civ. P. 56(c).
When considering a motion for summary judgment, all genuinely
disputed facts must be resolved in favor of the party against whom
summary judgment is sought. <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372; 127
S.Ct. 1769, 1776 (2007). If, after considering the evidence in the
light most favorable to the nonmoving party, the court finds that no
rational jury could find in favor of that party, a grant of summary
judgment is appropriate. <u>See</u> <u>Scott</u>, 550 U.S. at ---; 127 S.Ct. at
1776 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>,
475 U.S. 574, 586-587.

      **2.  Judgment on the Pleadings Standard**

In deciding a Rule 12(c) motion, courts apply the same standard
as that applicable to a motion to dismiss under Rule 12(b)(6). <u>See</u>
<u>Burnette v. Carothers</u>, 192 F.3d 52, 56 (2d Cir.1999). Accordingly,
when considering a motion to dismiss under Rule 12(b)(6), a trial
court must "accept as true all factual statements alleged in the

[Answer and affirmative defenses] and draw all reasonable inferences in favor of the non-moving party," McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.2007) (citation omitted), although mere "'conclusions of law or unwarranted deductions'" need not be accepted. See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A Moore, James William & Jo Desha Lucas, Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed.1984)). Conclusory allegations "'will not suffice to prevent a motion to dismiss.'" See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir.2002) (quoting Gebhardt v. Allspect, Inc., 96 F.Supp.2d 331, 333 (S.D.N.Y.2000)).

Moreover, under Supreme Court precedent, a district court must determine whether the "[f]actual allegations...raise a right to relief above the speculative level, on the assumption that all the allegations in the [Answer and affirmative defenses] are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the allegations must meet the standard of "plausibility." See id. at 563 n. 8, 564, 127 S.Ct. 1955 (2007). Twombly does not require that the complaint (or here, the Answer with affirmative defenses) provide "detailed factual allegations," id. at 555, 127 S.Ct. 1955 however, it must "amplify a claim with some factual allegations...to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir.2007).

**B.   Aet Rail's Cross-Motion as to STS's Counterclaims**

Plaintiff's cross-motion for summary judgment dismissing with prejudice defendant's first two counterclaims pursuant to Rule 56 and/or judgment on the pleadings under Rule 12(c) is denied. Here, the Court having granted defendant's motion to withdraw its counterclaims without prejudice pursuant to Rule 41(a)(2), plaintiff's cross-motion for summary judgment and/or judgment on the pleadings dismissing the same counterclaims is moot. <u>See</u> <u>ParamesWaran v. Mysorekar</u>, 2006 WL 3393688, at *4 (E.D.N.Y.2006) (where party diligently seeks dismissal under Rule 41(a)(2), and where opposing party has not demonstrated prejudice or vexatious conduct, Rule 41 motion will be granted even in face of summary judgment, which is thereby rendered moot).

**III. <u>Aet Rail's Cross-Motion as to STS's Five Affirmative Defenses</u>**

The plaintiff also requests that the Court dismiss defendant's First, Second, Sixth, Seventh and Eighth Affirmative Defenses under Rule 56 and/or 12(c). The defendant's five affirmative defenses include: statute of limitations, allegations that defendant terminated the subcontract with plaintiff for cause, plaintiff breached the agreement between the parties by failing to perform according to the terms of the agreement, plaintiff breached the agreement by failing to perform as scheduled under the terms of the parties agreement, plaintiff breached the agreement by failing to

perform adequately under the terms of the agreement. <u>See</u> Declaration of Byron L. Friedman ("Friedman Decl."), Ex. B.

Plaintiff, relying on <u>Applied Companies v. Lockhee Martin Librascope</u>, 211 F.3d 1271 (9th Cir.2000), a Ninth Circuit unpublished opinion case, argues that a party terminating an agreement for convenience may not maintain a claim for damages. <u>See</u> Pl. Cross-Motion Br. at 2. However, plaintiff does not discuss the affirmative defenses or the specific legal theories for moving against them. For instance, plaintiff does not explain how defendant's statute of limitations defense relates to the <u>Applied Companies</u> case. As defendant contends, plaintiff's failure to present specific legal grounds puts STS in the "impossible situation of guessing what grounds the plaintiff is moving on and trying to anticipate arguments that have not been met[.]" <u>See</u> Def. Reply. Br. at 3. The Court agrees with the defendant that this is not a proper method for presenting an argument on a motion for judgment on the pleadings and/or summary judgment. The plaintiff, as the moving party, must present its grounds for dismissal in its moving papers and its failure to do so results in a denial of plaintiff's motion to dismiss defendant's five affirmative defenses.

In addition, defendant has produced a declaration raising the question of whether plaintiff's performance was substandard and untimely. <u>See</u> Declaration of Viorel Aniniou. The Court makes no findings with respect to these allegations as stated in defendant's

declaration. However, given the lack of discussion by plaintiff of defendant's affirmative defenses and the declaration provided by defendant, the Court finds that summary judgment dismissing defendant's affirmative defenses is not appropriate at this time. See Scott v. Harris, 550 U.S. 372, 127 S.Ct. at 1776 (Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts"). Thus, the Court finds that plaintiff's motion for judgment on the pleadings and/or summary judgment relating to defendant's five affirmative defenses is denied without prejudice.

### IV.  __Plaintiff's Motion to Strike Portions of the Answer__

Plaintiff also moves, pursuant to Fed.R.Civ.P. 12(f), to dismiss or strike portions of the defendant's Answer. Specifically, plaintiff seeks to strike the "for cause" language in paragraphs 18 and 23 of the defendant's Answer arguing that defendant terminated the agreements for convenience and not "for cause." See Pl. Cross-Motion Br. at 2. In this regard, plaintiff argues that if the court follows the Applied Companies case, it must strike ¶¶ 18 and 23 since it includes "for cause" language.

Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored so that parties may be afforded the opportunity to support their contentions in more depth at trial.

See <u>Byas v. New York City Dep't of Corrections</u>, 173 F.R.D. 385 (S.D.N.Y. 1997); <u>see also</u> <u>Beauchamp v. United States</u>, 1998 U.S. Dist. LEXIS 11573 (W.D.N.Y. 1998). Indeed, the Second Circuit has cautioned that courts should not tamper with pleadings, particularly at the preliminary stages of litigation, unless there is a strong reason for doing so. <u>See</u> <u>e.g.</u>, <u>Thomas v. NASL Corp.</u>, 2000 WL 1725011 (S.D.N.Y. 2000); <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir. 1976); <u>Chacko v. Dynair Svc., Inc.</u>, 1998 WL 199866 (E.D.N.Y. 1998) (motion to strike is an extraordinary remedy); <u>SEC v. Lorin</u>, 869 F. Supp. 1117 (S.D.N.Y. 1994) (the civil procedure rules evidence a strong preference that parties have an opportunity to develop their arguments). Here, the items which plaintiff seeks to strike from the defendant's Answer do not satisfy the Rule 12(f) standard. Defendant's allegations and denials may be unsatisfactory to the plaintiff, but they are not "redundant, immaterial, impertinent, or scandalous matter," and, thus, are not appropriate matters for a Rule 12(f) motion to strike.

Furthermore, the defendant's assertion that the agreement was terminated for cause is not an "insufficient defense" for purposes of a Rule 12(f) motion. At this stage of the proceeding, with very limited discovery, this Court accepts both parties' factual allegations as true and has drawn all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996). However, these same inferences will not apply at trial. Thus,

defendant may still prove at trial that the contract was terminated "for cause." The relevance of the "for cause" language remains an open question until the issue is pursued in discovery. Accordingly, it is not appropriate at this time in the litigation to strike ¶¶18 and 23. Thus, plaintiff's motion to strike ¶¶18 and 23 of the Answer is denied without prejudice.

## V. <u>Declaratory Judgment Relief</u>

Plaintiff argues, among other things, that the Court should issue a declaratory judgment that "CFR provision of the Caltran's contract[3] apply to the sub-contract agreement between plaintiff and defendant" since "such a declaratory judgment will assist in clarifying the measure of damages owed to plaintiff [which is] an issue of dispute between the parties." <u>See</u> Pl. Reply Br. at 6. Defendant opposes this request and argues that procedurally plaintiff is barred since it did not demand declaratory relief in its complaint. <u>See</u> Def. Reply. Br. 5. In addition, defendant contends that the request on this motion is not a distinct claim for declaratory relief but rather "raises a legal issue attendant to interpretation of a contract otherwise at issue in the case." <u>See</u> <u>id.</u>

"[F]ederal courts have 'unique and substantial discretion in deciding whether to declare the rights of litigants[.]'" <u>Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.</u>, 2003 WL 21277114, at *4

---

[3]As previously mentioned, in October 2003, the California Department of Transportation ("Caltrans") awarded a contract to STS ("Contract #75AO205") for the overhaul of 66 bi-level intercity rail cars.

(S.D.N.Y. June 2, 2003) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)); Holup v. Gates, 544 F.2d 82, 85 n. 3 (2d Cir.1976) (the "granting of declaratory relief is governed by equitable principles, and within the sound discretion of the reviewing court"); see also 28 U.S.C. §2201(a). "The court must consider whether a declaratory judgment will [i] 'serve a useful purpose in clarifying and settling the legal relations in issue'; or [ii] 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Camofi Master LDC v. College Partnership, Inc., 452 F.Supp.2d 462, 480 (S.D.N.Y.2006) (quoting Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir.1992)).

The declaratory judgment plaintiff seeks would "serve[ ] neither of these two objectives." Camofi Master, 452 F.Supp.2d at 480. Where the declaratory relief sought is already encompassed within the substantive claims, plaintiff can obtain the requested relief without aid of a separate declaratory judgment claim. See Fisher-Price, Inc. v. Well-Made Toy Manuf. Corp., 1993 WL 379589, *2 (W.D.N.Y. 1993). Here, it will be necessary to analyze the parties' rights and obligations under the various contracts, sub-contracts and agreements in connection with the breach of contract claims. Accordingly, a declaratory judgment on the same issues, such as the applicability of the CFR provision, would be duplicative. See Core-Mark Int'l Corp. v. Commonwealth Ins. Co., 2006 WL 2501884, at *9 (S.D.N.Y.2006); see also Gen. Motors Corp. v. Dealmaker, LLC, 2007 WL 2454208, at *3-4

(N.D.N.Y.2007); <u>Miramax Film Corp. v. Abraham</u>, 2003 WL 22832384, at *15 (S.D.N.Y.2003) ("The lawfulness of defendants' actions will be determined by resolution of the contract claim. Hence, the declaratory relief will serve no useful purpose[.]") Thus, the Court declines to entertain plaintiff's request for declaratory relief. Plaintiff's motion as to its declaratory judgment claim is denied.

## VI. <u>STS's Motion for Partial Summary Judgment</u>

### A. <u>Quantum Meruit Claim</u>

In Count Two, plaintiff alleges that it is entitled to recover for services it provided to defendant on the basis of quantum meruit. <u>See</u> Partial SJ Friedman Decl., Ex. A. Defendant argues that plaintiff is unable to recover under quantum meruit because a valid contract covers the subject of this dispute. <u>See</u> Def. Partial SJ Br. at 4. Plaintiff counters that California law permits contract and quantum meruit claims to proceed side by side so long as one recovery is sought. <u>See</u> Pl. Partial SJ Opp. Br. at 8. The parties do not dispute that the agreements are governed by California law. Quantum meruit is a doctrine of "quasi contract." <u>See Paracor Fin. v. Gen. Elec. Capital Corp.</u>, 96 F.3d 1151, 1167 (9th Cir.1996). In California, "an action based on an implied-in-fact or quasi contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." <u>Lance Camper Mfg. Corp. v. Republic Indemnity Co. of America</u>, 44 Cal.App.4th 194, 203 (2d Dist.1996).

Federal courts in California have held that "[u]nder California law...,unjust enrichment [quantum meruit] is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." Paracor Fin., 96 F.3d at 1167. Here, whether the Court accepts STS's or AET's contention as to which documents constitute the express contract terms, both parties' allegations in the pleadings demonstrate that a written contract existed. Defendant argues that because the parties relationship was governed by a written contract, the quantum meruit claim must fail. See Def. Partial SJ Reply Br. at 3. The Court agrees.

In this case, neither party disputes that they were parties to a written contract. Even if plaintiff may argue that there is a dispute as to which document expresses the terms of the parties' agreement, plaintiff nonetheless still is bound by its allegations that its relationship with defendant was subject to a written contract that establishes the circumstances under which plaintiff would be entitled to damages. Plaintiff cannot proceed with a claim for quantum meruit because the parties' respective rights were set out in written agreements. Under California law, an action in quasi-contract does not lie "when an enforceable, binding agreement exists defining the rights of the parties." Paracor Fin., 96 F.3d at 1167; Sutter Home Winery v. Vintage Selections, 971 F.2d 401, 408-409 (9th Cir.1992) (denying on the pleadings defendant's quasi-contract

claims because relationship between parties governed by a valid express contract); see also Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal.App.4th 1410, 1419-1420 (1996). Thus, defendant's motion for partial summary judgment is granted and Count Two of plaintiff's Complaint is dismissed.

### B.    Theft of Intellectual Property Claim

In Count Four, plaintiff alleges that defendant stole plaintiff's intellectual property and gave that information to "Fluid Tech," which was the subcontractor hired by defendant to complete the wheelchair lift work after defendant terminated plaintiff's subcontract. See Partial SJ Friedman Decl., Ex. A. Defendant contends that the "theft of intellectual property" claim is inconsistent with the contract language between the parties, which stated that any knowledge that plaintiff disclosed to defendant "shall not be deemed confidential or proprietary information and shall be acquired" by defendant from any restrictions as to use or disclosure. See Def. Partial SJ Br. at 6. As such, defendant claims that it was free to use and disclose the information it was given without restriction and there can be no claim that defendant stole its own property. See id. Defendant further argues that the work on the wheelchair lifts were governed by a series of S.O.s, which included a clause that explicitly addressed information that the plaintiff may have provided to the defendant. See id. Specifically, ¶4 of the S.O. stated:

RELEASE OF INFORMATION **Any knowledge or information, which Seller may disclose to STS, shall not be deemed to be confidential or proprietary information and shall be acquired by STS free from any restriction as to use or disclosure thereof.** Seller shall not, without the prior written consent of STS, publicly announce or otherwise disclose the existence or the terms of this Agreement, or release any publicity regarding this Agreement, or use the name of STS in any manner, or any of its products. This provision shall survive the expiration, termination or cancellation of this Agreement.

<u>See</u> O'Kelly Decl., Ex. 3. (Emphasis added)

Plaintiff argues that contrary to defendant's arguments, the P.O.s or S.O.s were not the contracts but they were issued merely pursuant to the governing contracts (#s213 and 222) and were coterminous with them. <u>See</u> O'Kelly Decl. dated April 3, 2009. Moreover, plaintiff states that the parties' agreement relating to the wheelchair lift work was as noted in the July 7, 2004 proposal from plaintiff to defendant. <u>See</u> <u>id.</u> Accordingly, plaintiff claims that because the P.O.s and S.O.s were not the governing contracts, the plaintiff's fourth cause of action should not be dismissed based on the "release of information" in the S.O. Finally, plaintiff argues that even if the Court finds that the "release of information" language is applicable, defendant's motion should still be denied because defendant has failed to pay for the intellectual property and therefore it has not "acquired" the rights within the meaning of the S.O. clause. <u>See</u> <u>id.</u>

Considering all the documents that plaintiff claims comprise the contract between the parties (P.O.s and S.O.s, contract #s 213 and

222 and the July 7, 2004 letter), still leads to the conclusion that plaintiff could not have provided any confidential information to defendant in the course of the subcontractor's performance. Accordingly, no confidential information could have been stolen. As cited above, the language of ¶4 of the S.O. provides no basis for a theft of intellectual property claim since it explicitly acknowledges that no confidential information would be provided. In addition, the P.O.s relating to the wheelchair lifts indicate that they are "subject to the terms and conditions of STS Service Contract Number 222[.]" <u>See</u> Partial SJ Friedman Decl., Ex. A. While the relevant provisions in contract #222 require plaintiff to treat certain information that it received from defendant as confidential, the provisions are explicit that it is a one-way arrangement and does not provide any reciprocal protection for plaintiff. <u>See</u> <u>id.</u>[4] Indeed, sub-paragraph 6.6 specifically states:

> IN PROVIDING SERVICES UNDER THIS AGREEMENT, CONTRACTOR UNDERSTANDS THAT STS DOES NOT WISH TO RECEIVE FROM CONTRACTOR ANY INFORMATION WHICH MAY BE CONSIDERED CONFIDENTIAL TO CONTRACTOR AND/OR TO ANY THIRD PARTY.

---

[4]Clause 6.0 is entitled Confidential Information and sub-clauses 6.1 to 6.5 states in pertinent part:

6.1    Confidential Information shall mean information that is labeled as "Confidential" and (1) disclosed to or obtained by Contractor In connection with, and during the term of this Agreement and (2) which relates to STS' past, present and future research, development and business activities. It shall also mean all items prepared for and submitted to STS in connection with work performed under this Agreement including drafts and associated materials.

6.2    For a period of three (3) years from the date of disclosure, Contractor agrees to hold all such Confidential Information in trust and confidence for STS and not to use such Confidential Information other than for the benefit of STS.

6.5    Upon termination or expiration of this Agreement, Contractor will return to STS all written or descriptive matter, including but not limited to drawings, blueprints, descriptions, or other papers. documents, tapes or any other media which contain any such Confidential Information.

<u>See</u> Partial SJ Friedman Decl., Ex. A., contract # 222, ¶6.6. As can be seen by the clause above, ¶6.6 explicitly states that plaintiff knew it was not providing any confidential information to defendant. Moreover, ¶7 states that

> 7.1. All of the items prepared for or submitted to STS by Contractor under this Agreement shall **belong exclusively to STS** and shall be deemed to be works made for hire. To the extent that any of the deliverable items may not, by operation of law, be works made for hire, **Contractor hereby assigns to STS ownership** of copyright in the deliverable items and STS shall have the right to obtain and hold in its own name copyrights, registrations and similar protection which may be available in the deliverable items. Contractor agrees to give STS or its designees all assistance reasonably required to perfect such rights.
>
> 7.2. To the extent that any pre-existing materials are contained in the items, **Contractor grants to STS an irrevocable, non-exclusive, worldwide, royalty-free license** to: (1) use, execute, reproduce, display, perform, distribute (internally or externally) copies of, and prepare derivative works based upon, such pre-existing materials and derivative works thereof, and (2) authorize others to do any, some or all of the foregoing.
>
> 7.3 No license or right is granted to Contractor either expressly or by implication, estoppel or otherwise to publish, reproduce, prepare derivative works based upon, distribute copies of, publicly display, or perform any such items, except pre-existing materials of Contractor, either during or after the terms of this Agreement.

<u>See</u> <u>id.</u>, ¶7 (emphasis added). These paragraphs further demonstrate that plaintiff was not providing any confidential information to defendant and that any information plaintiff provided was the property of defendant. Moreover, the July 7, 2004 letter from plaintiff is silent on this issue.

Even accepting AET's contentions relating to the documents comprising the subcontract's terms, any dispute as to the subcontract's terms is not material on the issue of whether there was theft of intellectual property. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.") Accordingly, the court views all facts in the light most favorable to the nonmoving party, "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). The court finds that plaintiff could not have provided confidential information to defendant in the course of the performance of the contract and as such no confidential information could have been stolen. Thus, defendant's motion for partial summary judgment is granted and Count Four of plaintiff's Complaint is dismissed.[5]

---

[5]Plaintiff also claims that defendant failed to pay for the intellectual property and so it has not "acquired" the rights within the meaning of the S.O. clause. As such, plaintiff argues that this breach prevents defendant from raising the cited contractual language in defense to the theft of intellectual property claim. See Pl. Partial SJ Opp. Br. at 7. Here, plaintiff is seeking to enforce and not rescind the contract. In addition, plaintiff is seeking money damages it claims are due under the contract. Because plaintiff is suing for money damages, it has elected to retain the benefits of the contract and sue for damages instead of seeking rescission. Having "clearly elected to proceed on one, [it] is

# **CONCLUSION**

For the reasons set forth above, I find the following:

(1)  Defendant's Motion to Withdraw its Counterclaims without prejudice pursuant to Rule 41(a)(2) is granted. Plaintiff does not oppose the defendant's request for dismissal of the third counterclaim without prejudice. Accordingly, the Court dismisses the third counterclaim without prejudice.

(2)  Plaintiff's Cross-Motion to Dismiss with prejudice defendant's first two counterclaims pursuant to Rule 56 and/or 12(c) is denied as moot.

(3)  Plaintiff's Cross-motion pursuant to Rule 56 and/or 12(c) for summary judgment and/or judgment on the pleadings relating to defendant's five affirmative defenses (First, Second, Sixth, Seventh and Eighth) is denied without prejudice.

(4)  Plaintiff's Cross-motion pursuant to Rule 12(f) to strike ¶¶18 and 23 of the Answer is denied without prejudice.

(5)  Plaintiff's Cross-motion as to its declaratory judgment claim is denied.

(6)  Defendant's motion for partial summary judgment is granted and Count Two of plaintiff's Complaint is dismissed.

---

bound by this election and cannot thereafter pursue the other." <u>See</u> <u>Denevi v. LGCC, LLC</u>, 212 Cal.App. 4th 1211, 1218 (6th Dst.), *rev. den.*, (2004). Accordingly, plaintiff is seeking to enforce the contract and thus, it must accept the contract as controlling.

(7) Defendant's motion for partial summary judgment is granted and Count Four of plaintiff's Complaint is dismissed.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca

Michael A. Telesca
United States District Judge

DATED: Rochester, New York
        December 30, 2009